UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| ELIZABETH STREZA, <br><br> Plaintiff, <br><br> v. <br><br> BANK OF AMERICA, *et al.*, <br><br> Defendants. | Civil Action No. 3:13–CV–573 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants' Motion to Dismiss (ECF No. 7) and on a Motion to Amend the Complaint ("Motion to Amend") (ECF No. 13) filed by *pro se* Plaintiff Elizabeth Streza ("Streza"). On September 3, 2013, Streza filed a Complaint alleging that eight named Defendants violated a number of state and federal laws in handling the foreclosure of her home. Defendants filed a Motion to Dismiss on September 27, 2013. Streza filed a Response to Defendants' Motion to Dismiss on November 1, 2013. In the conclusion of her Response, Streza made a Motion to Amend, stating that she is "hoping to make it a simpler case, and easier to follow." The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons that follow, Defendants' Motion to Dismiss will be GRANTED, Streza's Motion to Amend will be DENIED, and the Complaint will be DISMISSED.

I.  BACKGROUND[1]

On January 24, 2006, Streza entered into a mortgage loan transaction with Countrywide Home Loans, Inc., ("CHL") in the amount of $176,000 to purchase property located at 2244

---

[1] For the purposes of this Memorandum, the Court assumes all of Streza's well-pleaded allegations to be true, and views all facts in the light most favorable to Streza. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

Orion Road, Jarratt, Virginia 23867 ("Property").[2] Streza's mortgage was originally serviced by Countrywide Home Loans Servicing, LP, which became known as BAC Home Loans Servicing, LP, in 2009. Both of these entities as well as Countrywide Bank, FSB, merged with and into Bank of America, N.A. ("BANA") prior to the initiation of this lawsuit, and Streza names each entity as a Defendant in this suit. Streza additionally names Bank of America Corporation ("BAC"), Countrywide Financial Corporation ("CFC"), and "Bank of America" as Defendants; however, in responding for all Defendants, BANA asserts that each of these last Defendants is improperly named either because it does not originate or service mortgage loans (as for BAC and CFC) or because it is not an existing corporate entity (as for "Bank of America"). Because BANA has responded for each named Defendant and for the sake of simplicity, this Memorandum refers to Defendants collectively, without attributing factual allegations to any particular Defendant.

Streza describes herself as a "distressed" home owner; however, she does not allege whether, or the extent to which, she is in arrears on her mortgage. (Compl. ¶ 3.) Streza does allege that in 2010, she travelled with her mother to an event sponsored by the Neighborhood Assistance Corporation of America ("NACA") event in Atlanta, Georgia for the purpose of obtaining a home loan modification.[3] (Compl. ¶ 42.) Streza alleges that by 2010, the Property was significantly overvalued, as was the tax-assessment of the Property. At the NACA event on June 13, 2010, Streza met with a representative of BANA to discuss the possibility of a home loan modification based on the current value of her home.

Streza alleges that the BANA representative promised Streza that the desired loan modification would be offered and, thereby, created an enforceable contract. Specifically, Streza alleges that the BANA representative signed a document ("No Solution Form") indicating that

---

[2] Streza additionally describes her mortgage as being "backed" by Fannie Mae, but does not allege specific facts to indicate the relationship she or her loan has with Fannie Mae.

[3] Streza indicates that this trip was costly and that contributed to her mother's death in April 2013. However, she does not appear to assert a claim for promissory estoppel and, even construing the Complaint liberally, does not plausibly allege that Defendants' representations caused her to attend the NACA event.

BANA would provide a home appraisal. Streza alleges that the BANA representative promised that after the appraisal was complete and Streza submitted certain documents, BANA would reduce the principle owed on Streza's loan. The No Solution Form appears to be a temporary denial of loan modification and states as the reason for denial, "[N]eed to request a current value of the property to continue with review." (Mem. Opp'n Mot. Dismiss Ex. AA, at 1.) The No Solution Form also indicates that additional documents were needed, including a hardship letter, two years of tax documents, and a utility bill. Finally, the No Solution Form expressly disclaimed that "NACA'S AFFORDABLE PAYMENT IS NOT GUARANTEED BY SERVICER/INVESTOR." (*Id.* Ex. AA, at 1.)

Along with the No Solution Form, Streza filed a Request for Modification and Affidavit ("Modification Affidavit"). Streza indicates that the Modification Affidavit was completed prior to the NACA event, but that she signed it on June 13, 2010, just prior to meeting with the BANA representative. In signing the Modification Affidavit, Streza certified, "I understand that the Servicer will use the information in this document to evaluate my eligibility for a loan modification or short sale or deed-in-lieu of foreclosure, but the Servicer is not obligated to offer me assistance based solely on the statements in this document." (*Id.* Ex. AA, at 4.)

Streza alleges that shortly after meeting with the BANA representative on June 13, 2010, she provided the requested documents and waited for BANA to provide a home appraisal. Streza alleges that no home appraisal ever occurred despite her repeated attempts to contact Defendants. In July of 2010, Streza was offered a loan modification; however, the proposed loan modification did not reduce the principal of the loan, carried a forty-year term, and included a Modification Bankruptcy Disclosure Rider (Compl. Ex. A), to which Streza objected. Streza alleges that she never accepted the offered loan modification because Defendants would not respond to her requests for an explanation of the modification loan's terms.

Streza alleges that twice, while she was awaiting BANA to provide an appraisal as promised, Defendants initiated foreclosure proceedings on the Property without proper notice.

3

First, Streza alleges that Defendants initiated foreclosure proceedings in October 2010, which were halted only because of "the pressures of the robo-signing scandal." (Sur-reply Mot. Dismiss, ECF No. 19, at 1.) Second, Streza alleges that Defendants hired Shapiro & Burson, LLP, who sent a notice of foreclosure sale ("2012 Notice") on February 13, 2012, indicating that foreclosure was scheduled to occur on March 2, 2012. Streza was ultimately successful in halting the foreclosure sale by obtaining an injunction from the Circuit Court of Henrico County, Virginia the day before the scheduled sale. However, Streza asserts that the 2012 Notice constituted a breach of the Deed of Trust by Defendants because the foreclosure was scheduled "without the required acceleration notice of 30 days prior to foreclosure proceedings." (Compl. ¶ 43.)

> In pertinent part, the Deed of Trust states,
>
> Lender shall give notice to Borrower prior to acceleration . . . . The notice shall specify . . . a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured . . . . If the default is not cured on or before the date specified in the notice, Lender at its option may . . . invoke the power of sale . . . .
>
> If Lender invokes the power of sale, Lender or Trustee shall give to Borrower . . . notice of sale as required by Applicable Law.

(Compl. Ex B ¶ 22.) Streza notes that she received the 2012 Notice only sixteen days before the scheduled foreclosure and asserts, at various points in her court filings, that the 2012 Notice violated due process, state law, federal consumer laws, and section 1692e(10) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* Although Streza appears to remain in possession of the Property,[4] she alleges that she was "extremely distressed," (Sur-reply Mot. Dismiss 1), and that these foreclosure proceedings caused her "much grief and expense," (Compl. ¶¶ 54, 57).

Also in 2010, Streza requested that NACA and the Consumer Mortgage Audit Center ("CMAC") perform a forensic audit of the documents provided and created during her mortgage

---

[4] The Court draws this conclusion from the fact that Streza's prayer for relief includes a request for a court-ordered loan modification and an injunction of any foreclosure proceedings against the Property.

loan transaction with CHL. The audit indicates that it should not be construed as taking any legal position or opinion, or as giving any legal advice. On the basis of documents provided by Streza, the audit concluded that: (1) consumer information and privacy policy, as required by the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 *et seq.*, was missing; (2) a good faith estimate as required by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, and Regulation X, 24 C.F.R. § 3500.7(a), was not provided within three days of closing; (3) a booklet on closing costs, as required by the RESPA and Regulation X, 24 C.F.R. § 3500.6(a)(1), was not provided within three days of closing; and (4) the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226, were violated in some unspecified respect.

In November 2012, after she had successfully obtained an injunction to prevent Defendants' foreclosure on the Property, Streza overheard a neighbor comment on a rumor that Streza "was moving soon." (Compl. ¶ 48.) Streza alleges that Defendants are the only possible source for the apparent rumor that Streza was facing foreclosure. She asserts that Defendants' decision to leak this information was embarrassing and damaging to her reputation. Additionally, Streza alleges that by their conduct, Defendants marketed her property for sale to investors prior to foreclosure, in violation of section 1692c(b) of the FDCPA.

From before the collapse of the real estate market in 2008 until approximately August 2011, Streza was employed as a real estate agent. The Complaint includes many broad allegations regarding Defendants' participation in events and practices that ultimately led to the collapse of the real estate market. On the basis of these allegations, Streza claims that the "mortgage companies eliminated the Plaintiff's career" and, by destroying her career as a real estate agent, "took away her ability to pay her mortgage." (Compl. ¶¶ 50, 65.)

The Complaint seeks six forms of relief. First, for Defendants' broken promises, misconduct, and breach of the deed of trust, Streza requests $500,000 in compensatory and punitive damages. Second, she also asks the Court to order an appraisal by a local appraiser in Greensville County so that she can obtain a loan modification based on the current value of the

5

Property. Third, for the elimination of her career, Streza seeks $800,000 in compensatory damages, which she will put towards educational costs to rehabilitate herself for another career. Fourth, Streza asks the Court to subpoena all lobbying activity records regarding the Commodities Futures Modernization Act of 2000 in order for the Court to determine the partiality and corruption that caused this legislation to be passed. Fifth, Streza requests an injunction of any foreclosure proceedings against the Property applicable to Defendants as well as any other servicing company. Sixth and finally, Streza requests costs and attorneys' fees.

II. LEGAL STANDARDS

Rule 12 of the Federal Rules of Civil Procedure allows a defendant to raise a number of defenses to a complaint at the pleading stage, including failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 & n.3. The Court need not accept legal conclusions that are presented as factual allegations, *id.* at 555, or "unwarranted inferences, unreasonable

conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### III. DISCUSSION

Because Streza brings this action *pro se* and the named counts in the Complaint cite no particular law allegedly violated, the Court has liberally construed the Complaint and organizes its analysis by topical claims Streza has raised against Defendants.

#### A. *Violation of Unspecified State and Federal Consumer Protection Laws*

The first three counts of the Complaint allege that Defendants' conduct violated state and federal consumer protection laws regarding loan servicing, foreclosure proceedings, and loan origination, respectively. However, the allegations that relate to those counts include a significant number of legal conclusions and claims insufficiently supported by facts to be nudged "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. For example, Streza alleges that Defendants engaged in unfair and deceptive practices by "failing to perform proper modification underwriting," "failing to adequately train staff responsible for loan modifications," and "failing to establish adequate process for loan modification." (Compl. ¶ 35.) These allegations and many like them are unsupported by any facts specific to Streza or to Defendants' interactions with her regarding her mortgage loan.

Streza appears to have looked for guidance in drafting her Complaint to BANA's participation in *United States v. Bank of America Corporation*, No. 12-cv-00631 (D.D.C. Apr. 5, 2012), which resulted in a consent judgment ("National Mortgage Settlement") against various mortgage lenders, including Defendants. While Streza is correct that the National Mortgage Settlement does not preclude her from bringing an independent claim against Defendants, it also does not provide her with enforcement authority. *See Rehbein v. Citimortgage Inc.*, No. 2:13-cv-65, 2013 U.S. Dist. Lexis 49104, at *15 (E.D. Va. April 4, 2013). More importantly, the National Mortgage Settlement does not relieve Streza of her obligation to meet the requirements of Federal Rule of Civil Procedure 8(a)(2).

7

The text of Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the Supreme Court explained in *Twombly*, 550 U.S. 544, that a complaint must contain more than a formulaic recitation of the elements or bare legal conclusions in order to survive a challenge under Federal Rule of Civil Procedure 12(b)(6). 550 U.S. at 555-56. Although detailed factual allegations are not needed, the complaint must contain sufficient factual allegations to create more than a mere suspicion that the plaintiff is entitled to relief. *Id.* at 555 (citing 5 C. Wright & A. Miller, Fed. Prac. & Proc. § 1216, pp. 235–236 (3d ed. 2004)). In other words, the complaint must contain plausible, rather than merely speculative, grounds to infer the existence of each element of the cause of action. *See id.* at 556.

Many of Streza's allegations fail this standard either because they are undermined by contradictory information in the Complaint or because they are merely bare legal conclusions. For example, Streza alleges that Defendants "wrongfully den[ied] modification applications" and "never got to work on [her] case," but admits that she was offered a modification and elected not to accept it (Compl. ¶¶ 24, 35, 42); she alleges that Defendants failed "to provide a mortgage loan modification based on the real value" of her home and failed to provide an "accurate appraisal" of the Property, but indicates that mortgage companies use the tax-assessed value to calculate loans, and that the tax-assessed value of her home was inflated, (Compl. ¶¶ 29, 44). The Complaint similarly lodges many conclusory allegations against Defendants, including, without limitation, claims that they failed to perform proper modification underwriting, to gather loan documentation, to adequately hire and train staff, and to establish adequate loan modification processes. (Compl. ¶ 35.) These allegations are simply unsupported by any additional factual material in the Complaint and, to be taken as true, would require the Court to draw unsupported legal conclusions regarding the adequacy of Defendants' conduct. For these reasons, such allegations raise only a speculative, rather than a plausible right to relief, and therefore, fail as a matter of law. Accordingly, the Court must dismiss them without prejudice.

To the extent that the Complaint includes more specific factual allegations, Streza's claims are addressed in the discussions that follow.

### B. *Violation of HAMP*

The bulk of the Complaint's allegations center around Streza's attempt to obtain a home loan modification based on the appraised value of the Property. Defendants characterize these allegations as a claim for violation of the Home Affordable Modification Program ("HAMP"). Although Streza appears to deny any claim pursuant to HAMP, (Sur-reply Mot. Dismiss 3), to the extent that the Complaint raises any claim under HAMP, the Court will DISMISS it with prejudice.

HAMP was implemented by the Secretary of Treasury in 2009 pursuant to authority delegated by Congress in the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201 *et seq.* HAMP was intended to incentivize and regulate the process of home loan modifications for borrowers who have defaulted on their mortgages. *See Williams v. Geithner*, No. 09-1959 ADM/JJG, 2009 U.S. Dist. LEXIS 104096, at *6 (D. Minn. Nov. 9, 2009). However, nothing in HAMP requires mortgage lenders or servicers to modify a loan. To the contrary, HAMP merely guarantees that "an eligible borrower will be evaluated for a loan modification, and do[es] not *require* participating mortgage servicers to modify loans." *Pennington v. PNC Mortg.*, No. 2:10cv361, 2010 U.S. Dist. LEXIS 143157, at *13 (E.D. Va. Aug. 11, 2010) (internal quotation marks omitted) (citing *Wright v. Bank of Am.*, No. CV 10-01723, 2010 U.S. Dist. LEXIS 73807 (N.D. Cal. July 22, 2010)).

More importantly, courts have uniformly held that HAMP, which is not codified as a federal statute or regulation, provides no private right of action for homeowners. *See id.* at *9-10 (collecting cases). Courts in this district have consistently held that homeowners cannot bring contract claims as incidental beneficiaries of HAMP agreements between loan servicers and the government. *Condel v. Bank of Am.*, No. 3:12CV212-HEH, 2012 U.S. Dist. LEXIS 93206, at 18 (E.D. Va. July 5, 2012) (citing *Pennington*, 2010 U.S. Dist. LEXIS 143157, at *11-12). Because

9

Streza has provided no legitimate basis on which to bring a claim for violation of HAMP, the Complaint will be dismissed with prejudice to the extent that it seeks to bring such a claim.

### C. *Breach of Oral Contract Regarding Loan Modification*

Streza's memoranda appear to clarify that—rather than a claim for HAMP violations—the Complaint raises a claim for breach of a contract that purportedly arose at the NACA event on June 13, 2010. The Court finds that Streza's claim for breach of oral contract fails as a matter of law both because the Complaint does not plausibly allege the existence of a legally enforceable contract and, alternatively, because the Complaint does not plausibly allege that any damages resulted from the breach.

On this Motion to Dismiss, the Court must take the factual allegations in the Complaint as true. *Mylan*, 7 F.3d at 1134. Streza alleges that the BANA representative with whom she met at the NACA event in 2010 made an oral promise to order or obtain an appraisal of the Property. As such, the Court will assume this fact to be true. Streza also appears to allege that the BANA representative made an oral promise that a loan modification based on the appraised value of the Property would be offered to her; however, this allegation is significantly undercut by written language on the No Solution Form and the Modification Affidavit, which each disclaim any guarantee of a loan modification. Further undercutting Streza's allegation is the fact that NACA referred her for a loan modification on the basis of her diminished income, rather than the decreased value of her home. (Compl. ¶ 42.) Streza concedes that she was offered a loan modification; it simply wasn't the loan modification she desired.

Even assuming that the Court credits both factual allegations, the Complaint must plausibly allege a breach of contract cause of action in order to survive Defendants' Motion to Dismiss. In Virginia, Streza must allege: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). Assuming, without deciding, that Streza has plausibly alleged the first two of these

10

elements, it appears plain that the Complaint does not allege that Streza suffered any cognizable damages as a result of BANA's alleged breaches.

To be sure, the Court is sensitive to the fact that Streza has suffered greatly as a result of the 2008 housing market crash and the death of her mother; however, "Virginia law does not permit recovery for mental anguish in claims predicated on a breach of contract cause of action, absent allegations that the conduct at issue rises to the level of a separate and independent tort." *Hall v. Nord*, 21 Va. Cir. 372, 373 (Va. Cir. Ct. 1990) (citing *Sea-Land Serv., Inc. v. O'Neal*, 297 S.E.2d 647, 653 (Va. 1982)). The only recoverable damages arising from a breach of contract are those actually caused by the breach. *Carley Capital Grp. V. Newport News*, 709 F. Supp. 1387 (E.D. Va. 1989) (citing *Haass & Broyles Excavators Inc. v. Ramey Bros. Excavating Co.*, 355 S.E.2d 312, 315 (Va. 1987); *APCO v. John Stewart Walker, Inc.*, 201 S.E.2d 758, 767 (Va. 1974)). The plaintiff "bears the burden of establishing a causal connection between the defendant's breach and the damages claimed." *Haass & Broyles*, 355 S.E.2d at 315.

While Streza may be correct that BANA's representative orally promised to order a home appraisal and/or to recommend a particular home loan modification, she concedes that Fannie Mae, who is not a defendant in this action, would have prohibited Defendants from offering Streza any loan modification that reduced the principal owed. (Mem. Opp'n Mot. Dismiss 2; Sur-reply Mot. Dismiss 3.) In light of this fact, Defendants' alleged failures to perform a home appraisal or to recommend a particular loan modification are not the cause of Streza's damages. And the Complaint lacks any allegation that Defendants' conduct with regard to the BANA representative's oral promises harmed Streza in a manner independent of Fannie Mae's decision to withhold principal-reduction loan modifications.[5]

For these reasons, the Complaint fails to allege that Streza was damaged by Defendants' breach of oral promises made by BANA's representative. Because the Complaint lacks any

---

[5] For example, Streza does not allege that she relied to her detriment on Defendants' promise of a home appraisal or a particular loan modification.

11

allegation regarding this essential element of the breach of contract claim, it fails as a matter of law. As such, the Court will dismiss Streza's breach of oral contract claim without prejudice.

### D. *Loan Origination Claims*

Count Four of the Complaint alleges that Defendants violated three federal laws by failing to make certain disclosures at closing, as described in the forensic audit performed by NACA and CMAC on Streza's behalf. Specifically, Streza alleges that Defendants violated the GLBA, the RESPA, and the TILA. However, the conduct Streza complains of occurred at the closing of her contract to purchase the Property in 2006. As such, Streza either lacks a private right of action to enforce her claims, or they are time-barred.

The GLBA applies only to financial institutions and does not create a private right of action for alleged violations. *See* 15 U.S.C. § 6801(a); *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007); *Goldman v. Brannon*, No. 5:11-CT-3051-FL, 2013 U.S. Dist. LEXIS 132815 (E.D.N.C. Sept. 17, 2013). Because Congress did not authorize private individuals to bring suit for violations of the GLBA, Streza's claim fails as a matter of law.

Streza's claims under the RESPA also fail for want of a private right of action. Streza alleges that she was provided with neither a good faith estimate nor a booklet of closing costs in 2006. These documents are required by the RESPA to be provided to consumers to help them "understand the nature and costs of real estate settlement services." 12 U.S.C. § 2604(a). Courts have uniformly held that there is no private right of action for failure to provide a good faith estimate at closing as required by 12 U.S.C. § 2604(c). *See, e.g.*, *Collins v. FMHA-USDA*, 205 F.3d 1366, 1368 (11th Cir. 1997); *Mentecki v. Saxon Mortg.*, No. 96-1629-A, 1997 U.S. Dist. LEXIS 1197, at *15-16 (E.D. Va. Jan. 10, 1997). This conclusion is supported by the fact that Congress eliminated such a private right of action from the TILA when it codified the current version of section 2604(c). *Collins*, 205 F.3d at 1368. Similarly, section 2604 does not explicitly provide a private right of action for failure to provide a closing cost booklet. *Mentecki*, 1997 U.S. Dist. LEXIS 1197, at *15.

Finally, Streza alleges that Defendants violated the TILA and related Regulation Z in some unspecified manner. However, violations of TILA in the context of mortgage loan disclosures occur, if at all, no later than when the plaintiff enters into the mortgage agreement. *See Caballero v. Am. Mortg. Network*, No. 1:11cv622 (JCC/JFA), 2011 U.S. Dist. LEXIS 87210 (E.D. Va. Aug. 8, 2011) (citations omitted); *McAnelly v. PNC Mortg.*, No. 2:10-cv-02754, 2011 U.S. Dist. LEXIS 60920, at *6 (E.D. Cal. June 8, 2011). As such, Defendants violated TILA with regard to Streza's mortgage loan, if at all, no later than January 24, 2006. TILA explicitly requires that causes of action be brought within one year, or in certain circumstances within three years, of the date of violation. 15 U.S.C. § 1640(e). Accordingly, the TILA claims raised by the Complaint and brought more than seven years after Streza closed on the Property are time-barred.

Because each of Streza's loan origination claims is either time-barred or cannot be enforced through a private right of action, the Court will dismiss these claims with prejudice.

### E. FDCPA Claims

Streza alleges that Defendants breached the provisions of the FDCPA in two regards. First, she alleges that Defendants' attempts to foreclose on the Property in 2010 and 2012 constituted violations of 15 U.S.C. § 1692e, which prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). Second she alleges that Defendants communicated information about her foreclosure to third parties in violation of 15 U.S.C. § 1692c, which prohibits debt collectors from communicating "with any person other than the consumer" and several other specified parties. 15 U.S.C. § 1692c(b).

Importantly, both asserted sections of the FDCPA purport to regulate only the conduct of debt collectors. The term "debt collector" is a term of art defined by the FDCPA to include "any person . . . who regularly collects or attempts to collect . . . debts owed or due . . . to another." 15 U.S.C. § 1692a(6). At first blush, Defendants appear to fall within this definition because they

13

appear to have continually attempted to collect on the debt Streza owes on her mortgage loan. However, the FDCPA explicitly excludes from the definition of "debt collector" any entity "collecting or attempting to collect any debt . . . [which] concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). More persuasively, the legislative history of section 1692a(6) indicates conclusively that Congress did not intend to include mortgage servicing companies in the definition of "debt collector" as long as the mortgage loan was not in default at the time it was assigned. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citations omitted).

Streza has not alleged that she was in default on her loan until after it was assigned to BANA. In fact, Streza explicitly states, "Countrywide got out of the scene and assigned my mortgage to Bank of America Corporation, [sic] before I started getting behind on my payments." (Mem. Opp'n Mot. Dismiss 1.) In light of this representation, it is clear that Defendants are not "debt collectors" within the meaning of the FDCPA because they are attempting to collect a debt owed to them, rather than to "another." 15 U.S.C. § 1692a(6). Because Defendants are not debt collectors within the meaning of the FDCPA, these claims fail as a matter of law, and the Court will dismiss them with prejudice.

### F. *Breach of the Deed of Trust*

The Complaint also attempts to raise claims for breach of the Deed of Trust arising from Defendants' attempts to foreclose on the Property in 2010 and 2012. Unfortunately, Streza's factual allegations are somewhat unclear. Specifically, Streza may have conflated two different notices contemplated by the Deed of Trust in her Complaint. The Deed of Trust requires the Lender to give an acceleration notice upon default which, among other things, must provide the Borrower with a minimum of thirty days to cure the default. (Compl. Ex B ¶ 22.) If the default is not cured, the Lender is authorized to invoke the power of sale, which in turn requires notice of sale "as required by Applicable Law." (Compl. Ex B ¶ 22.) Virginia law, however, requires that the notice of sale be mailed no less than fourteen days, rather than thirty days, before the sale.

Va. Code § 55-59.1(A) (2014). The 2012 Notice that underlies one of Streza's claims was a notice of sale, rather than a notice of acceleration, and was mailed eighteen days prior to the scheduled foreclosure sale. Accordingly, unless the 2012 Notice constituted both notice of acceleration and notice of sale, it complied with the requirements of Virginia law and the Deed of Trust. *See id.* ("The written notice of proposed sale when given as provided herein shall be deemed an effective exercise of any right of acceleration contained in such deed of trust . . . .").

Nevertheless, the literal allegations in the Complaint are that Streza never received any notice of acceleration and received no notice of sale prior to the 2010 foreclosure attempt. For the purposes of the remaining analysis the Court credits these allegations as true.

Defendants assert that Streza's claims based on the Deed of Trust (and, in fact, all of the Complaint's claims) fail because of Streza's alleged noncompliance with a different provision of the Deed of Trust. The Deed of Trust provides that

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigation or the member of a class) that arises from the other party's actions pursuant to this Security Interest or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party [in writing] . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Compl. Ex. B ¶ 20.) Defendants assert that Streza never provided them with written notice of her claims and, therefore, that she was not authorized to bring any action against them.

Dismissal on a Rule 12(b)(6) motion may be appropriate "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston– Salem*, 85 F.3d 178, 181 (4th Cir. 1996). However, it is far from clear that Defendants allegation constitutes a meritorious affirmative defense. As an initial matter, Streza appears to dispute Defendants' allegation that she never provided written notice of her claims. (Mem. Opp'n Mot. Dismiss 5.) More importantly, at this procedural stage in the litigation, Streza has not been afforded the opportunity to refute Defendants' affirmative defense with evidence. Defendants

cannot seriously contend that their allegation—which seeks to prove a negative—is "clearly reveal[ed]" on the face of the Complaint. *Brooks*, 85 F.3d at 181. For these reasons, Defendants' argument is wholly unpersuasive.

Nevertheless, Streza's claims based on breach of the Deed of Trust appear to fail as a matter of law. As explained previously, Streza's claims for breach of contract cannot survive the Motion to Dismiss absent a plausible allegation that she suffered cognizable damages as a result of the breach. *See supra* Section III.B.3; *Filak*, 594 S.E.2d at 614. Streza arguably alleges that she suffered two forms of damage as a result of Defendants' allegedly unlawful foreclosure attempts. First, she explains in some detail that she was extremely stressed and emotionally distraught because she had so little time to prevent a foreclosure sale. (Compl. ¶ 43.) Second, she alleges in conclusory fashion that the Defendants' conduct caused her "much . . . expense." (Compl. ¶¶ 54, 57.) Both of Streza's claimed damages are insufficient as a matter of law.

Under Virginia law, Streza cannot recover damages for her emotional distress unless she separately pleads and proves that Defendants' conduct constituted a tort. *Sea-Land*, 297 S.E.2d at 653 ("[A]bsent some tort, damages for humiliation or injury to feelings are not recoverable in an action for breach of contract." (quoting D. Dobbs, *Handbook on the Law of Remedies* § 12.25, at 927 (1973)) (internal quotation marks omitted)). Even with the most liberal construction, the Complaint does not plausibly allege claims for either intentional or negligent infliction of emotional distress because (1) there is no allegation that Defendants' conduct was intended to cause Streza emotional distress and (2) there is no allegation that Streza was physically injured by Defendants' conduct. *See Ruth v. Fletcher*, 377 S.E.2d 412, 412-13 (Va. 1989) (quoting *Womack* v. *Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)) (listing the elements of intentional infliction of emotional distress); *id.* at 416 (citing *Hughes* v. *Moore*, 197 S.E.2d 214, 217 (Va. 1973)) (recognizing a cause of action for negligent infliction of emotional distress when it "resulted in actual physical injury").

Streza's claim for monetary damages is similarly deficient. As an initial matter, there are no facts to support the conclusory allegation that the 2010 and 2012 foreclosure proceedings caused Streza pecuniary loss. For example, she does not allege that she hired counsel or lost wages by being taken away from work. Most importantly, Streza concedes that neither foreclosure attempt resulted in sale of the Property; she appears to remain in possession of the Property to this day. Additionally, even if the Court assumed that Streza has sufficiently pled the existence of some pecuniary loss, the Complaint fails to demonstrate that such a loss accrued because she was provided insufficient time to respond to the notice of sale. *See Jaldin v. Recontrust Co., N.A.*, 539 F. App'x 97, 102 (4th Cir. 2013) ("[Plaintiffs] contention that the breach in the terms of the deed of trust damaged them because it forced them to hire counsel and other 'professionals' is unavailing. There does not appear to be any dispute that [plaintiffs] were in default of their loan."). Streza does not dispute that she was in default on her mortgage loan both in 2010 and 2012. As such, Streza faced the legitimate risk of foreclosure. Under the Deed of Trust, and Defendants could have foreclosed just thirty days after proper notice of acceleration was tendered and just fourteen days after proper notice of sale. The Complaint simply fails to connect any pecuniary damages to the fact that Streza had fewer than thirty days to prevent foreclosure.

For these reasons, the Complaint fails to state a claim for breach of the Deed of Trust, and the Court will dismiss these claims without prejudice.

### G. <u>Destruction of Career Allegation</u>

Finally, Streza alleges that Defendants are responsible for the destruction of her career and the housing market, generally. Because Streza cannot prove a causal link between her employment problems and Defendants' general conduct, the Court lacks standing to hear this claim.

Federal courts only have jurisdiction to hear cases or controversies where the plaintiff has standing to raise the claim asserted. *See* U.S. Const. art. III, § 2; *Lujan v. Defenders of*

17

*Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff has standing if: (1) the plaintiff has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a decision in the plaintiff's favor. *See Lujan*, 504 U.S. at 560-61. The plaintiff "bears the burden of proving these three elements by alleging sufficient facts in its complaint." *Douglas v. Branch Banking & Trust Co.*, No. 3:12cv854, 2013 U.S. Dist. LEXIS 55122, at *9-10 (E.D. Va. Apr. 17, 2013) (internal citations omitted).

"In order to prove causation, a plaintiff must demonstrate that the injury 'fairly can be traced to the challenged action of the defendant, and not . . . resulting from the independent action of some third party not before the court.'" *Bishop v. Bartlett*, 575 F.3d 419, 425 (4th Cir. 2009) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). The Complaint's allegations confirm that Streza is unable to fairly trace her employment troubles to Defendants' conduct. (*See* Compl. ¶¶ 49-51.) Streza first alleges that the housing market collapse is attributable to enactment of the "Commodities Futures Modernization Act of 2000." The remainder of Streza's employment-related allegations are directed at "mortgage companies" generally. Notably absent from the Complaint is any allegation that Streza's real estate business and income would have remained steady absent the conduct of which Defendants are accused. *See Bishop*, 575 F.3d at 425. It is entirely speculative that Streza would have remained economically successful as a real estate agent had Defendants not participated in the conduct alleged. *Accord id.* Streza's employment troubles could have been caused solely by conduct of mortgage companies not named as Defendants to this action, as well as a host of other factors extrinsic to the Complaint. As such, Streza has failed to adequately plead that a causal connection exists between the destruction of her career and the Defendants' conduct.

Because Streza has failed to adequately plead a causal connection, the Court lacks standing to adjudicate her final claim. Accordingly, the Court will dismiss this claim without prejudice.

### H. *Motion to Amend*

Under Rule 15(a)(2), a party may amend its pleading with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The rule suggests that courts "should freely give leave when justice so requires." *Id.* This broad rule gives effect to the "federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).

The Fourth Circuit has interpreted Rule 15(a) to mean that "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber*, 438 F.3d at 426 (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Courts should only deny leave to amend on the grounds of futility when the proposed amendment is clearly insufficient or frivolous on its face. *See Johnson*, 785 F.2d at 10. If, however, a court determines that the amendment would be futile, leave to amend may be properly denied. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). In order to avoid denial on the basis of futility, a party seeking to amend must meet the requirements for the particular cause of action by plausibly alleging facts sufficient to survive a motion to dismiss. *See Pfizer v. Teva Pharms. USA, Inc.*, 803 F. Supp. 2d 459, 461 (E.D. Va. 2011).

The Proposed Amended Complaint would streamline Streza's allegations, drop CFC and Countrywide Bank, FSB, from this action, and omit any claim based on the forensic audit performed by NACA and CMAC. However, would also omit any formally named counts. More importantly, the Proposed Amended Complaint cannot overcome any of the deficiencies noted in the foregoing analysis. No factual allegations beyond those provided in Streza's Complaint and memoranda are included in the Proposed Amended Complaint. Accordingly, the Proposed

Amended Complaint is clearly insufficient for the same reasons warranting dismissal of the Complaint. The Motion to Amend, therefore, will be denied as futile.

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT the Motion to Dismiss and DENY the Motion to Amend. To the extent that it raises claims regarding violation of HAMP, the GLBA, the RESPA, the TILA, and the FDCPA, the Complaint will be DISMISSED with prejudice. In all other respects, the Complaint will be DISMISSED without prejudice..

Let the Clerk send a copy of this Memorandum Opinion to Plaintiff and to all counsel of record.

An appropriate Order shall issue.

_____/s/_____  
James R. Spencer  
Senior U. S. District Judge

ENTERED this   1st     day of August 2014.